IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT GENE REGA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-156 |
| | ) | |
| v. | ) | Judge McVerry |
| | ) | Magistrate Judge Bissoon |
| JEFFREY A. BEARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Robert Gene Rega is a Pennsylvania state prisoner currently incarcerated in the State Correctional Institution at Green ("SCI-Greene"), located in Waynesburg, Pennsylvania. Rega was assaulted by another inmate, Lamont Overby, on March 31, 2007, and he alleges that Defendants failed to protect him from the assault, or to intervene when the assault occurred. Rega further alleges that Defendants conspired to permit the assault, and that he was denied medical treatment for his injuries following the assault. Finally, Rega alleges that he was denied prescription medication (Prilosec) for a stomach condition from December 21-29, 2007.

Presently before the Court is a Motion for Summary Judgment (Doc. 296) filed by the Department of Corrections Defendants.[1] Plaintiff has responded to the motion (Doc. 323) and it is ripe for disposition.

### A. Legal Standard

A party's burden in response to a well-pleaded motion for summary judgment is to present ". . . specific facts showing that there is a *genuine issue for trial*." Fed. Rule Civ. Proc. 56(e) (emphasis added). If the non-moving party cannot so demonstrate the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.

---
[1] Defendants Beard, Folino, J. Martin, B. Martin, Grainey, Armstrong, Barclay, Leach, Oddo, Muccino, Henderson, McAnany and Driskill.

Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence, viewed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52.

### B. Plaintiff's Rule 56(f) Motion

Plaintiff initially asserts that summary judgment is premature because he has not been provided with relevant discovery (Doc. 320). Plaintiff's motion arises under Federal Rule of Civil Procedure 56(f). The Court of Appeals for the Third Circuit has "interpreted Rule 56(f) as imposing a requirement that a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." Dowling v. City of Phila., 855 F.2d 136, 139-40 (3d Cir. 1988). The purpose of Rule 56(f) is to ensure that a party has "an opportunity to make full discovery" and is not "railroaded" by a premature motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986).

Plaintiff asserts that he has been denied relevant discovery that he sought in a motion to compel discovery (Doc. 234). The motion to compel has been ruled upon since Plaintiff filed his Rule 56(f) motion (Doc. 333), and Plaintiff filed an amended response to the pending motion for summary judgment (Doc. 341). Therefore, Plaintiff's Rule 56(f) motion is either moot because the Court has ruled upon the motion to compel that was the basis for his claim that he was denied discovery, or it should be denied in the alternative because Plaintiff has not identified any proper

discovery that has been withheld. In either event, Plaintiff can no longer assert that he has been denied discoverable material necessary to respond to the motion for summary judgment.

### C. Underlying facts – Failure to protect/intervene

Plaintiff is an inmate incarcerated in the Capital Case Unit at SCI-Greene. The Capital Case Unit is a high-security area of the prison where inmates are single-celled, and are locked in those cells approximately 22 hours per day. Inmates are allowed to attend exercise yard with another inmate, or may do so alone. Inmates are handcuffed and escorted when outside of their cells, with the exception of approved inmate workers who are not handcuffed when they are engaged in work on the cell block (Doc. 297-2, ¶¶ 32, 34).

On March 31, 2007, Plaintiff was in his cell in the Capital Case Unit, D Pod, with his door secured. Corrections Officer defendants Barclay and Leach had just left D Pod to go to an adjacent area, "A Pod," where they were escorting inmates who were assisting in cleaning cells. Defendant Officer Armstrong, who was in the "control bubble," stated that he was informed that one of the spray bottles used to clean cells was missing (Doc. 297-2, ¶ 15). Armstrong decided to allow inmate Lamont Overby out of his cell to help look for the spray bottle (Id., ¶ 17). Armstrong states that he was using the intercom system to contact individual inmates on D Pod to determine if they had the missing bottle, but that when he tried to activate Rega's intercom, he mistakenly hit the button that opened Rega's cell door (Id., ¶ 20). Overby was walking past Plaintiff's cell at about this time, and Armstrong saw Overby walk into Rega's cell and exit a few seconds later, at which time Overby closed and secured Rega's door (Id., ¶ 22). Overby then walked back to his own cell, and shut himself inside (Id., ¶ 23). Armstrong was later informed that Overby had assaulted Rega.

Defendant Officer Henderson also was in D Pod at the time, although he was sitting at a desk from which he could not see Rega's cell (Doc. 297-2, p. 11). Henderson noticed Overby walking from cell to cell, but thought nothing of it, and he was unaware of the assault of Rega until Defendant Armstrong informed him sometime later that an assault had occurred (Id., ¶¶ 8, 12). He also believes he heard a cell door open at some point, but that this was not an unexpected event when there were workers in the area (Id., ¶ 8).

Plaintiff Rega's version of events differs from Defendants' version in a few important respects. Rega alleges that he was sleeping in his cell on March 31, 2007, when Overby entered and began to assault him. He claims that assault lasted for at least five minutes, and Rega shouted for help twice during the assault, but no officer responded to his calls for help (Doc. 341-2, ¶ 38; Doc. 319-1, ¶ 88). Rega believes that Defendant Armstrong conspired with Overby to facilitate the assault. In this respect, Rega has presented the declaration of inmate George Lopez, who states that he overheard a conversation between Overby and Armstrong two days prior to assault. Overby allegedly indicated to Armstrong that he needed a door opened to "take care of some business," and Armstrong is said to have responded "Don't worry about it, I will handle it, just don't kill him." (Doc. 326, p. 7).

Rega concedes that Defendants Barclay and Leach were in another area of the facility during the time the assault occurred, and, while he maintains that they were able to see back into D Pod, he does not present any evidence that either Barclay or Leach actually saw Overby enter his cell, or that they were aware that Rega's cell door had been opened. Likewise, there is no evidence that either Barclay or Leach could have heard Plaintiff's calls for help.

Rega believes that Overby was paid by another inmate, Mark Spotz, to assault Rega. Prior to the assault, Rega and Spotz had a disagreement concerning the ownership of some art

4

supplies. Rega asserts that several of the named Defendants were aware of his dispute with Spotz. Rega does not present any evidence that he had prior disagreements with Overby, or that any named Defendant had been warned in any fashion that Overby was a danger to Plaintiff.

### D. Analysis – Failure to protect/intervene

Rega's claim that he was not protected from an assault arises under the Eighth Amendment to the United States Constitution. An inmate making such a claim has the burden of proof to establish that a prison official both knew of and chose to disregard an "excessive risk to inmate health or safety." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The Court of Appeals for the Third Circuit further held that the knowledge requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Id.; see also Hamilton v. Leavy, 117 F.3d 742 (3d Cir. 1997). In order to survive the Defendants' summary judgment motion, Rega must produce sufficient evidence to support an inference that the Defendants "knowingly and unreasonably disregarded an objectively intolerable risk of harm." Beers-Capitol, 256 F.3d at 132 (internal citation and quotation omitted). It is not sufficient to assert that a Defendant should have recognized the risk; the evidence must be sufficient to support the inference that "the defendant must have recognized the excessive risk and ignored it." Id. at 138.

Plaintiff has presented evidence from which a jury could conclude that several of the named Defendants were aware that he and inmate Mark Spotz had a dispute concerning ownership of art supplies. He also argues that Spotz was initially sent to different area of the prison, but was later moved back closer to him, although not on the same "pod." Plaintiff's disagreement with inmate Spotz, and any changes made to Spotz's cell assignment that may have

occurred, are irrelevant to Plaintiff's claim of a failure to protect. Spotz did not assault Plaintiff. Further, although Plaintiff believes that Spotz paid Overby to assault him, Plaintiff has not presented any evidence that any named Defendant was aware of any such plot prior to the assault, or that any named Defendant (other than Defendant Armstrong as discussed below) had any reason to suspect that inmate Overby posed a specific danger to Plaintiff. Therefore, the evidence as presented establishes that no named Defendant knowingly exposed Plaintiff to an excessive risk of assault simply by having him housed in the same area of the prison as Overby, or in moving or not moving Spotz to a different cell, or in the context of the manner in which the Capital Case Unit was supervised and operated.

What Plaintiff has presented, however, is evidence from which a reasonable juror could find that Defendant Armstrong was aware that Overby wanted access to Plaintiff's cell, and a further reasonable inference that Armstrong knew that Overby's intent was to harm Plaintiff. A reasonable juror could choose to believe the testimony of inmate Lopez regarding the conversation he says he overheard between Overby and Armstrong, and the jury could choose to disbelieve Armstrong's explanation of the inadvertent coincidences that led to Overby gaining access to Plaintiff's cell. Placed in the context of a unit where inmates are locked in their cells almost 22 hours per day, the actions of Armstrong permit at least an inference of intentional conduct. Specifically, Armstrong let Overby out of his cell to help in the search for a missing spray bottle after Officers Barclay and Leach had left the area with inmates who were assisting in cleaning cells. Then, ostensibly by inadvertence, Armstrong activated not Rega's intercom as he had intended, but rather the unlocking mechanism of Rega's cell door, just as inmate Overby is walking past Rega's cell. Overby then enters Rega's cell and exits, without any comment or alert from Armstrong or any apparent effort to prevent this happenstance from occurring. This

6

evidence must be considered with Rega's version of events, as is required when addressing a motion for summary judgment, that Armstrong (who admits having seen Overby enter Rega's cell) permitted this unsafe situation to exist for a period of time ranging from a few seconds to multiple minutes. A jury could reasonably conclude from this evidence that the breaches of security which enabled the assault of Plaintiff to occur were not accidental. From this finding, the jury could infer (although it certainly would not be required to do so) that Armstrong knew of Overby's intent, and purposely chose to ignore the potential risk to Rega's safety.

Based on the foregoing, the Court finds and rules that there are genuine issues of material fact with respect to Plaintiff's claim of Defendant Armstrong's alleged failure to protect and Defendants' motion for summary judgment will be denied as to Defendant Armstrong.

A similar ruling applies to Plaintiff's failure to intervene claim. "[A] corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." Smith v. Mensinger, 293 F.3d 641, 650 (3rd Cir. 2002). Here, Defendant Armstrong does not deny that he would have had a duty to intervene in the assault of Rega by Overby, but asserts that he literally was unaware that an assault had occurred. If Rega's version of events is credited by a jury, however, they could conclude that Armstrong knew the assault was going to occur, and that he permitted Overby access to Rega's cell unsupervised for some period of time.

Based on the foregoing, the Court finds and rules that there are genuine issues of material fact with respect to Plaintiff's claim of Defendant Armstrong's alleged failure to intervene in the assault by Overby on Plaintiff and Defendants' motion for summary judgment will be denied as to Defendant Armstrong.

Plaintiff has not, however, presented facts from which a reasonable jury could conclude that any of the other Defendants was aware of the alleged understanding between Overby and Armstrong. Likewise, there is no evidence that any other Defendant was aware of Rega's cell door having been opened, or that Overby had gone in. In short, no other Defendant was in a position to observe facts sufficient to place them on notice that an "excessive risk to inmate health or safety" existed, or that they intentionally chose to ignore such risk. The sum total of Rega's allegations concerning Henderson, Leach and Barclay are his personal suspicion that they were aware of what was going to happen, and a bald assertion that Henderson must have heard Rega's calls for help during the assault. Rega's suspicion or surmise are not evidence, and Henderson's mere presence in an area where he could possibly have heard outcrys from an inmate are not sufficient to permit a finding of actual knowledge that an assault was taking place. From the evidence presented, Henderson had no reason to believe that Rega's cell door was open or that Overby (or any other inmate) posed a danger to Rega. On this record, no Defendant, with the exception of Armstrong, can be found to have been aware that an assault was going to occur, or to have been in a position to intervene once the assault occurred.

Based on the foregoing, the Court finds and rules that there are no genuine issues of material fact with respect to Plaintiff's claims that any Defendant (other than Armstrong) failed to protect Plaintiff from an assault, or failed to intervene once the assault occurred and Defendants' motion for summary judgment will be granted as to all Defendants except Defendant Armstrong.

Finally, Plaintiff asserts that several supervisors named as Defendants should be held liable for the assault because of a lack of supervision of the Capital Case Unit. Supervisory liability, however, may not be premised solely upon a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, some actual personal involvement of the supervisor(s) in the event(s) must be alleged. Id. Supervisory liability for Section 1983 violations can be established by evidence which establishes that officials: (1) participated in violating a plaintiff's rights; (2) directed others to violate a plaintiff's rights; (3) knew of, and acquiesced in, their subordinates' violation of a plaintiff's rights; or (4) knew of, and tolerated, past or ongoing misbehavior. Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 & n.3 (3d Cir. 1995).

Plaintiff has presented no evidence that any supervisor Defendant (namely Beard, B. Martin, Folino and Grainey) had any personal involvement in permitting the assault to occur, or that any of them had knowledge of Armstrong's actions and/or acquiesced in same. Further, Plaintiff has not presented any evidence from which a jury could find that any past incidents of inmate-on-inmate assaults occurred in the Capital Case Unit due to misconduct on the part of corrections officers, or that any such misbehavior was tolerated. In fact, the record establishes that Rega was placed in danger of assault on March 31, 2007, only because Armstrong (inadvertently or intentionally) unlocked a cell door that, had it remained locked as it should have, would have prevented Overby's access to the cell and the assault from happening. There is no evidence that any supervisor Defendant named in this case engaged in conduct which would subject him to supervisory liability in this case. Therefore, Defendants Beard, B. Martin, Folino and Grainey are entitled to summary judgment on Plaintiff's claim asserting supervisory liability.

**E. Conspiracy**

Plaintiff has alleged that Defendants Armstrong, Henderson, Leach and Barclay conspired with one another to permit the assault to happen. To sustain a conspiracy claim under Section 1983, a plaintiff must establish: "(1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." Marchese v. Umstead, 110 F. Supp.2d 361, 37 (E. D. Pa. 2000) (citations omitted). Here, as set forth above, Plaintiff has presented evidence that would permit a jury to infer that Armstrong knew that Overby intended to assault Plaintiff. However, there is no evidence whatsoever that any other Defendant had such knowledge or played any part in the assault. There are no facts of record from which a jury could reasonably infer the participation of Defendants Armstrong, Henderson, Leach and Barclay in a conspiracy with one another.

Accordingly, the Court finds and rules that there are no genuine issues of material fact with respect to Plaintiff's claims that Defendants Armstrong, Henderson, Leach and Barclay conspired with one another to permit the assault to happen. Therefore, Defendants' motion for summary judgment will be granted in this respect.

**F. Medical claims**

Plaintiff next asserts that he was denied medical treatment immediately following the assault, and that he was later denied prescription medication for a period of 8 days. In this respect, the law requires that prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1978). An inmate who seeks to state a claim that he was denied medical treatment in violation of his Eighth Amendment rights must allege and be able to prove: 1) that he was suffering from a "serious" medical need; and 2) that the prison officials were "deliberately indifferent" to that serious medical need. Id.

The Supreme Court of the United States has adopted a subjective approach when considering whether prison officials exhibited deliberate indifference. Farmer v. Brennan 511 U.S. 825, 842 (1994). Farmer teaches that:

> it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder [sic] may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

Id. at 842 (citations omitted). A showing of "a substantial risk of serious harm" under Farmer requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Therefore, even where there is a serious medical condition, a prisoner must also present facts that would permit a jury to conclude that the defendant prison officials acted with a sufficiently culpable state of mind. An inmate can show deliberate indifference where, for example, "prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering" or where knowledge of the need for medical care is accompanied by an "intentional refusal to provide that care." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (citations omitted).

**1. Defendants Driskill and McAnany – failure to treat following assault.**

Defendant Driskill, a nurse, saw Plaintiff an hour after the assault, and photographed the Plaintiff's reported injuries (Doc. 210, ¶¶ 142-146). Plaintiff apparently had bruising and swelling on his face and complained of pain throughout his body. Driskill is alleged to have given Plaintiff ointment for a scrape, but nothing else (Id., ¶¶ 150-152). Driskill did, however, tell Plaintiff to sign up for sick call if he needed anything further. Indeed, Rega contacted non-

moving Defendant Lukas within two hours after Driskill examined Plaintiff, and she responded to Plaintiff's complaint of "severe" back pain and pain throughout his body by offering to give him ibuprofen (Id., ¶¶ 155-160). Driskill is not alleged to have had any further involvement in Plaintiff's treatment following the assault, and Defendant McAnany is sued only because he addressed the grievance Plaintiff filed regarding the care he received immediately following the assault.

Defendants Driskill and McAnany argue that Plaintiff has not presented sufficient facts which would permit a finding that they were aware that their actions subjected Plaintiff to a substantial risk of harm. The Court agrees.

Driskill examined Plaintiff immediately following the assault, and directed Plaintiff to contact medical personnel if he needed further attention. Plaintiff, in fact, did seek additional medical attention and treatment within a few hours. Even if Driskill failed to appreciate the severity of Plaintiff's injuries (bruising of the face and other areas and pain from what ultimately proved to be a fractured rib) such failure could, at most, support a finding of negligence on the nurse's part as opposed to deliberate indifference. While awareness of an exposure to a substantial risk of harm may be established by circumstantial evidence, including the obviousness of the need for medical treatment, Farmer, 511 U.S. at 842, this was an uncomplicated case of an inmate having been assaulted and bruised, with swelling and pain. Plaintiff was not bleeding, or incoherent, nor did he exhibit any other palpable signs of severe distress. In such circumstances, the initial assessment by Driskill was not so cursory (even by Plaintiff's own account) as to permit an inference that Driskill knew that a delay in providing further treatment for pain caused Plaintiff to be exposed to a substantial risk of harm and undue suffering. Monmouth, supra. And, of course, Defendant McAnany had no involvement

whatsoever in Plaintiff's actual medical treatment, and he cannot be held liable simply because he was later involved with the determination of the grievance which Plaintiff filed.

Based on the foregoing, the Court finds and rules that there are no genuine issues of material fact with respect to Plaintiff's claims that Defendants Driskill and McAnany were deliberately indifferent to his medical condition following the assault and Defendants' motion for summary judgment will be granted.

### 2. Denial of Prilosec – Defendants Driskill and McAnany

Plaintiff has presented evidence that he had a long-standing prescription for Prilosec for his stomach condition, and that this medication was denied to him for a period of eight days from December 21, 2007, through December 29, 2007 (Doc. 210, ¶¶ 217-232). Plaintiff alleges that he immediately complained about the lack of this medication on December 21, 2007, and continued to complain until he finally received Prilosec on December 29, 2007. Plaintiff contends that Defendants Driskill and McAnany ignored his complaints (Id., ¶¶ 225-231). Defendants have presented evidence that the proper paperwork to obtain the Prilosec was timely forwarded to the contractor that the DOC uses to supply such medication, but the contractor was late in filling and delivering the order (Doc. 297-4, ¶ 17). Defendants also state that they have no authority to prescribe medications, and that their duty in responding to Plaintiff's requests is simply to forward them on to the prison physicians, which they did in a timely manner (Doc. 297-4, ¶¶ 8, 15).

Plaintiff argues that he informed Driskill and McAnany through sick call slips on December 26 and 27, 2007, that he had begun to vomit blood. However, Plaintiff does not contest Defendant Driskill's statement that neither he nor McAnany can provide emergency

medical care, and that all they could do with the sick call slips was to submit them for physician review and action, which they did (297-4, ¶¶ 16).

There is no evidence on this record that either Driskill or McAnany caused any delay in Plaintiff being provided his medication, because the lack of Prilosec was caused by the outside contractor failing to timely fill and deliver the order that had been timely placed. Further, neither Driskill nor McAnany can been held responsible for failing to treat Plaintiff when he complained that he was vomiting blood because they did all they could under the circumstandes, which was to submit Rega's sick call slips to the prison physician. In short, Plaintiff has not presented evidence that either Driskill or McAnany intentionally caused Plaintiff to be exposed to a substantial risk of harm and undue suffering. Monmouth, supra.

Based on the foregoing, the Court finds and rules that there are no genuine issues of material fact with respect to Plaintiff's claim that Defendants Driskill and McAnany violated the Eighth Amendment to the United States Constitution by failing to provide him with Prilosec from December 21-29, 2007, and they will be granted summary judgment.

### G. Retaliation – Driskill and McAnany

Plaintiff also asserts that he was denied Prilosec by Driskill and McAnany in retaliation for the grievance which he filed regarding the treatment or lack thereof which he received after the assault. "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Allah v. Seiverling, 229 F.3d 220, 224-25 (3rd Cir. 2000); Mitchell v. Horn, 318 F.3d 523, 530 (3rd Cir. 2003). In order to state a *prima facie* case of retaliation, a prisoner must demonstrate:

    1)     the conduct in which he was engaged was constitutionally protected;

      2)      he suffered "adverse action" at the hands of prison officials; and

      3)      his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3rd Cir. 2001). To show an "adverse action," Plaintiff must demonstrate that Defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. 2002) quoting Allah v. Seiverling, 229 F.3d at 225.

      Here, as set forth above, neither Driskill nor McAnany were responsible for the delay in providing Plaintiff his requested medication. The difficulty was caused by a failure to timely deliver by the contractor who supplies medications for the DOC. Therefore, no retaliatory action has been established by Plaintiff through the evidence of record. Therefore, Defendants Driskill and McAnany will be granted summary judgment on Plaintiff's retaliation claim as well.

      An appropriate order follows.

                                                      McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT GENE REGA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-156 |
| | ) | |
| v. | ) | Judge McVerry |
| | ) | Magistrate Judge Bissoon |
| JEFFREY A. BEARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 27th day of August, 2010, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Doc. 296) is:

(1) DENIED with respect to Plaintiff's claim that Defendant Armstrong failed to protect him from and/or failed to intervene in the assault by Inmate Overby;

(2) GRANTED with respect to all other Defendants on Plaintiff's failure to protect and failure to intervene claims;

(3) GRANTED with respect to Plaintiff's supervisory liability claims against Defendants Beard, B. Martin, Folino and Grainey;

(4) GRANTED with respect to Plaintiff's claim of conspiracy against Defendants Armstrong, Henderson, Leach and Barclay;

16

(5) GRANTED with respect to Plaintiff's claims that Defendants Driskill and McAnany were deliberately indifferent to his medical condition following the assault;

(6) GRANTED with respect to Plaintiff's claim that Defendants Driskill and McAnany violated the Eighth Amendment to the United States Constitution by failing to treat Plaintiff after the assault and failing to provide him with Prilosec from December 21-29, 2007 and,

(7) GRANTED with respect to Plaintiff's claim of retaliation against Defendants Driskill and McAnany.

IT IS FURTHER ORDERED that Plaintiff's Motion pursuant to Rule 56 (f) (Doc. 320) is DENIED.

BY THE COURT:

s/Terrence F. McVerry
Terrence F. McVerry
United States District Judge

cc:
**ROBERT GENE REGA**
FA 4771
S.C.I. at Greene
175 Progress Drive
Wayneburg, PA 15370

All counsel of record