**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT GENE REGA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-156 |
| | ) | |
| v. | ) | Judge McVerry/ |
| | ) | Magistrate Judge Kelly |
| JEFFREY A. BEARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I**. **RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Motion for Summary
Judgment filed by Defendants James Caramanna, M.D. ("Dr. Caramanna") and Michelle Lukas,
Certified Registered Nurse Practitioner ("Lukas"), ECF No. 393, be granted.

**II. REPORT**

By way of background, Robert Gene Rega ("Plaintiff") is a state prisoner who was
convicted in June 2002, of first degree murder in the death of a night watchman that occurred on
December 21, 2000.[1]   As a consequence, at all times relevant to Plaintiff's claims, he was
housed in the Capital Case Unit in the State Correctional Institution at Green ("SCI-Greene"),
located in Waynesburg, Pennsylvania.  As previously explained by the Court, the "Capital Case
Unit is a high-security area of the prison where inmates are single-celled, and are locked in those
cells approximately 22 hours per day. Inmates are allowed to attend exercise yard with another
inmate, or may do so alone. Inmates are handcuffed and escorted when outside of their cells,
with the exception of approved inmate workers who are not handcuffed when they are engaged

---

[1] Rega v. Beard, 933 A.2d 997 (Pa. 2007).

in work on the cell block." <u>Rega v. Beard</u>, Civ.A. No. 08-156, 2010 WL 3420963, at *2 (W.D. Pa. Aug. 27, 2010).

Plaintiff has filed a prisoner civil rights case against numerous named Defendants arising from alleged constitutional deprivations occurring at SCI-Greene. Currently before this Court is the Motion for Summary Judgment of Defendants Dr. Caramanna and Lukas, ("Moving Defendants").[2] There are two only remaining claims against the Moving Defendants. First, Plaintiff claims that after he was assaulted by a fellow prisoner, Defendant Lukas failed to treat him properly for his injuries, in violation of the Eighth Amendment. Plaintiff's second claim against the Moving Defendants is that they exhibited deliberate indifference to his serious medical needs, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment, by failing to ensure that Plaintiff's received a timely refill of his prescription for Prilosec or its generic equivalent, Omeprazole (hereinafter, "Prilosec"), causing him to be without Prilosec from December 21 to December 28, 2007.

Because Plaintiff fails to adduce sufficient evidence of the subjective prong necessary to establish an Eighth Amendment claim against the Moving Defendants, the Motion for Summary Judgment filed by the Moving Defendants should be granted.

## A. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). The moving

---

[2] While the Motion for Summary Judgment is filed on behalf of three Defendants, <u>i.e.</u>, Dr. Caramanna, Ms. Lukas and Mr. Leon Moore, Plaintiff has withdrawn all claims against Mr. Moore in response to the Motion for Summary Judgment. ECF No. 405 at 2, ¶ 2.

party bears the initial burden to show or point out why there is no genuine issue of material fact. Walters ex rel. Walters v. General Motors Corp., 209 F.Supp.2d 481, 484 (W.D. Pa. 2002). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial* . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); United States  v. City of Hoboken, 675 F.Supp. 189, 192 (D.N.J. 1987), *aff'd*, 980 F.3d 724 (3d Cir. 1992)(Table).

"The substantive law governing the dispute will determine which facts are material, and only disputes over those facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." DeHart v. Horn, 390 F.3d 262, 267 (3d Cir. 2004) (internal quotations omitted).   The evidence on summary judgment presents a genuine issue of fact only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The inquiry involves determining whether the evidence pointed to by the parties presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. See  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52).  If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50.

In short, the motion for summary judgment is an evidence testing device to see if there is sufficient evidence to support a party's position with respect to an issue for which that party bears the burden of proof at trial so as to justify holding a trial.

**B.  ANALYSIS**

### 1.  <u>Eighth Amendment Standard</u>

The United States Supreme Court has explained that analysis of an alleged violation of the Eighth Amendment involves a two pronged inquiry: 1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment and 2) a subjective inquiry into the mind of the person inflicting the harm. <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991).  <u>Accord</u>  <u>Sims v. Artuz</u>, 230 F.3d 14, 21 (2d Cir. 2000).  As to the subjective component, in cases involving the denial of medical care, the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976) (internal quotations omitted).  The Court has held that "deliberate indifference" occurs when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  As a corollary of the deliberate indifference standard, mere negligence by staff at the prison, medical personnel and physicians in treating prisoners is not sufficient to state an Eighth Amendment violation.  <u>Estelle</u>, 429 U.S. at 105-06.  The Supreme Court has held that:

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical

malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Id.

This test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment ... which remains a question of sound professional judgment.'" Little v. Lycoming County, 912 F.Supp. 809, 815 (M.D.Pa.1996) (citing Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)).

When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. Norris v. Frame, 585 F.2d 1183, 1186 (3d Cir. 1978) ("Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim.") *overruling on other grounds recognized in*, Boring V. Kozakiewicz, 833 F.2d 468, (3d Cir. 1987). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

Plaintiff bears the burden to prove, by competent evidence, both the subjective and the objective components of the Eighth Amendment claim. Newland v. Achute, 932 F.Supp. 529, 532 (S.D.N.Y., 1996) ("The plaintiff's burden in proving an Eighth Amendment violation consists of both an objective and subjective element."); Pasha v. Barry, No. Civ. A. 96-466, 1996 WL 365408, at *1 (D.D.C. June 21, 1996) ("the plaintiff bears the burden of demonstrating

that his claims satisfy both the objective and subjective requirements of a claim of 'cruel and unusual punishment.'").

## 2. Post Assault Treatment Claim

### (a) Medical care on the day of the assault.

For present purposes, it is undisputed that Plaintiff was assaulted somewhere between the times of 7:30 a.m., and 7:45 a.m., on March 31, 2007 and that the assault lasted for approximately five minutes. See ECF No. 407 at 18; ECF No. 427 at 19 to 20, ¶¶ 76 to 86. It is also undisputed that at approximately 8:45 a.m., Plaintiff was taken to the Medical Triage room in the Capital Case Unit and Plaintiff was there seen by Edward Driskill ("Driskill"), a nurse, who took pictures of Plaintiff's injuries and who provided Plaintiff with a 0.05mg packet of antibiotic ointment and noted that he would refer Plaintiff to a "PA or physician for further evaluation." ECF No. 394-4 at 3. ECF No. 427 at 33, ¶ 150.

The record also establishes that Nurse Driskill recorded in a Medical Incident Report ("MIR") that Plaintiff suffered minor abrasions to the right temple area, minor abrasions to the left side of his face and an abrasion to the dorsal aspect of his left foot. ECF No. 394-4 at 3. The MIR indicates that Nurse Driskill washed and cleaned the abrasions, applied TAO (i.e. Triple Antibiotic Ointment) to the abrasion sites (as in plural and not just to the foot, as Plaintiff suggests, ECF No. 427 at 33, ¶ 150). ECF No. 394-4 at 3. At some point in time, Plaintiff was returned to his cell. We note that Plaintiff denies that Nurse Driskill washed his wounds but Plaintiff asserts that he did so in his cell with anti-bacterial soap. ECF No. 394-5, Transcript at page 81, lines 22 to 25, page 82, lines 1 to 4.

It is also undisputed that at approximately 11:30 a.m., on the morning of the assault, Defendant Lukas came to Plaintiff's cell door. Shortly after seeing Plaintiff, Lukas recorded the following information in the medical Progress Notes.[3]

> S[i.e., Subjective]: FU [i.e. "follow up"] assault by another i/m [inmate]. Seen by nsg [nursing,] pictures taken.
>
> O[i.e., Objective] Seen [at] cell door. Scratches to face, rt [right] eye sclerae slightly red, denies visual Δ's [i.e., changes[4]], PEERL [i.e., pupils equal and equally reactive to light], From of all ext. [i.e., full range of motion of all extremities]. c/o [complains of] L [the "L" is inside a circle and means "left"] side tenderness, Ø [no] eccemoses [sic, should be ecchymoses, _i.e._, bruising] noted, red area L [again the "L" is inside a circle meaning "left"] foot.
>
> O[i.e., Objective] ↑+↓ [upper and lower] ext. [extremities] from [i.e., full range of motion]. See [illegible] report, injury
>
> A [i.e., Assessment]: cont. [continue?] of care.
>
> P [ i.e.. Plan] f/u [follow up] prn [i.e., as needed]

ECF No. 394-4 at 4 to 5.

### (b) Medical care in the days after the assault.

The Progress Notes also show that on April 1, 2007, the day after the assault, Lukas returned to Plaintiff's cell for follow up and that she "attempted to see IM to asses further

---

[3] In support of the Motion for Summary Judgment, the Moving Defendants attached Plaintiff's relevant medical records, including "Progress Notes", which are apparently chronologically arranged notations made by medical providers.

[4] http://i-base.info/ttfa/learning-resources/common-mathematical-signs-symbols-statistical-and-medical-terms (site last visited 12/12/2011).

injuries.  [But Plaintiff was] On visit [with] family member." The Progress Notes further indicate under "P", i.e., "Plan" that she was to "fu [follow up] 4/2/07."  ECF No. 394-4 at 5.   The Progress Notes further reveal that on Monday, April 2, 2007, at 8:30 a.m., Defendant Lukas saw Plaintiff in the Triage room on the unit and that he complained of pain and bruising.  She performed a thorough exam, ECF No. 394-4 at 6, and she ordered Motrin 600mg. for 10 days, an ice pack as needed for 48 hours. She also ordered an x-ray of Plaintiff's ribs and lumbar sacral spine.  ECF No. 394-4 at 7.   The x-ray was taken and a report was issued by the radiologist apparently on Saturday, April 7, 2007, ECF No. 394 at 8, showing Plaintiff had sustained a fractured left rib.

The Progress Notes also indicate that Plaintiff was next seen at sick call by Defendant Lukas on Tuesday April 10, 2007 where he complained of pain which awakened him.   On April 10, 2007, Lukas ordered Elavil for Plaintiff for 10 days and Motrin 600mg. for 30 days.  ECF No. 394-6 at 2, ¶ 14.

Additionally, in a verification in support of the Motion for Summary Judgment, Lukas verified that on March 31, 2007, she examined Plaintiff at 11:30 a.m., and noted that he had been seen by a nurse and that, upon examination, she found scratches to Plaintiff's face and a red area to the top of Plaintiff's left foot.  ECF No.  394-6 at 177, ¶ 7.  She also recounts her other treatment of Plaintiff.  Lukas further attests that "at no time did I deny Rega medication or care and treatment, which I felt was necessary.  At all times Rega's medical conditions were being monitored and treated within the standard of care."  Id., at 178, ¶ 27.

The foregoing evidence is sufficient to shift the burden to Plaintiff to come forward with evidence of "deliberate indifference" to establish an Eighth Amendment claim.

**(c) Plaintiff's evidence does not establish "deliberate indifference" by the Moving Defendants.**

Plaintiff makes a variety of assertions in an attempt to establish "deliberate indifference." First, he complains that Defendant Lukas did not have Plaintiff brought to the triage room but merely conducted her examination of him through his cell door, which according to him would negate the discovery of any internal injuries and that she never asked Plaintiff to remove his jumpsuit so as to ascertain any other injuries and that she asked him questions sarcastically. ECF No. 407 at 20 to 21. Plaintiff also complains that he told her about pain all over his body and she said she would provide him pain medication when she had time but that she never did.

The complaints asserted by Plaintiff are "evidence", at most, of negligence and not deliberate indifference. See Unterberg v. Correctional Medical Systems, Inc., 799 F.Supp. 490 (E.D. Pa. 1992). In Unterberg, a plaintiff-prisoner claimed that the treatment she received was perfunctory and, therefore, constituted an Eighth Amendment violation. Id. at 495. In rejecting this claim, the Court concluded that perfunctory examination/treatment, although it might constitute medical malpractice, does not amount to a constitutional violation. The court noted that:

> [i]n Hampton [v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976)], the Third Circuit made clear that medical malpractice alone will not give rise to an Eighth Amendment claim. Hampton specifically states:
>
>> to establish a constitutional violation, the indifference must be deliberate and the actions intentional.... Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts.

Id. at 497. Accord Bustamante v. Davis, No. 1:08-cv-01791, 2009 WL 3157522, at *4 4 (E.D.Cal. Sept. 29, 2009) ("Plaintiff alleges that Defendants Marsh and Jane Doe examined him from behind his cell door, told him that he would receive some band-aids, and did not document

9

his injuries. . . . Even assuming that Plaintiff's injuries from falling constituted a serious medical need, Plaintiff fails to demonstrate that Defendants Marsh, Doe, Michael, and Moody exhibited deliberate indifference towards his medical need. They examined him and gave him medical attention, even though they did not offer him pain medication, emergency medical examination, or a wheel chair that Plaintiff sought. A difference of opinion regarding medical treatment between medical personnel and Plaintiff does not amount to deliberate indifference. Accordingly, Plaintiff fails to state a cognizable claim against Defendants Marsh, Doe, Michael, and Moody.") (some citations omitted). In this case, Plaintiff's proffered evidence at most shows a perfunctory examination that amounts to no more than negligence and not deliberate indifference.

Perhaps the strongest argument Plaintiff makes is his claim that on the day of the assault, March 31, 2007, he told Defendant Lukas that he hurt all over his body and that she said in response that she would provide him pain medication but that then she did not do so. We note that in the contemporaneously created Progress Notes recorded by Nurse Driskill, whom Plaintiff also claims he told that he was experiencing pain all over his body, no such notation was made by Nurse Driskill of any such complaint of pain by Plaintiff. ECF No. 325 at 5; ECF 394-4 at 3. Similarly, in the Progress Notes created by Lukas, she did not document that Plaintiff complained of pain all over his body but only that he complained of left side tenderness but no bruising in that area was observed by Lukas. This last note by Lukas seemingly contradicts Plaintiff's sworn statement that Lukas did not have Plaintiff undo his jumpsuit, ECF No. 427 at 34, ¶ 161, otherwise how could Lukas record no bruising was observed on Plaintiff's left side. ECF No. 325 at 4. Those same notes indicated, under "P" for Plan, that Plaintiff would be followed up "prn" i.e., as needed.

For present purposes of ruling on the pending Motion for Summary Judgment, we accept Plaintiff's version of the events: that Lukas did not have Plaintiff undo his jumpsuit; that Plaintiff did tell Lukas that he had pain all over his body, and that she said she would provide him ibuprofen but that she did not do so that day. Even construing this evidence in the light most favorable to Plaintiff, it still fails to establish the requisite "deliberate indifference" required to make out an Eighth Amendment claim.

First, the "fact" that Lukas did not have Plaintiff undo his jumpsuit constitutes, at most, a claim of negligence.

Second, the claim that Plaintiff told Lukas he had pain all over his body and his claim that that she said she would provide him ibuprofen but did not is, at most, evidence that she either forgot to provide him pain medicine or that she lied to him. If she forgot, again, that is at most negligence. If the evidence shows that she lied to him, merely lying to a patient does not constitute deliberate indifference. See, e.g., Young-Flynn v. Wright, NO. 05 CIV.1488, 2007 WL 241332, at *17 (S.D.N.Y., Jan. 26, 2007) ("merely providing a prisoner with incorrect information regarding his medical condition or care does not constitute a constitutional violation, even if the act of providing false information is intentional. *See Hines v. Smith*, No. 04 Civ. 5903(PAC), 2006 WL 2038454, at *8 (S.D.N.Y. July 17, 2006) (noting that to sustain deliberate indifference claim under Eighth Amendment, plaintiff must plead both that defendant 'intentionally denied her care,' i.e. by lying to prevent her from receiving such care, and also show that care was 'objectively necessary').

The evidence provided by Plaintiff seems to indicate that Defendant Lukas did not believe that Plaintiff was actually in need of pain medication or at least not immediately in need of such medication. Plaintiff himself alleges that Defendant Lukas asked "do you hurt anywhere

11

or are you just looking for pain medication." ECF No. 427 at 34, ¶ 158 (some internal quotations omitted). This would seem to indicate that Lukas believed Plaintiff was only seeking pain medication and not actually in need of such. Plaintiff also points out that Defendant Lukas indicated that she told Plaintiff, "**when I have time**, I'll issue you some Ibuprofen." ECF No. 427 at 34, ¶ 159 (emphasis added). Again, this clearly indicates that Defendant Lukas did not believe that Plaintiff was in emergent need of pain medication. Such belief, even if in error, does not evidence deliberate indifference but merely negligence. <u>Ammons v. Altergot</u>, 968 F.2d 1218 (Table), 1992 WL 157551, at *3 (7th Cir. July 8, 1992)(Nurse "Altergot's belief that Ammons was malingering if honest but erroneous, . . . would not amount to the deliberate or even reckless infliction of punishment and so would not be actionable under the Constitution.")(some internal quotations omitted); <u>Price v. Cooper</u>, NO. 94 C 5142, 1996 WL 467242, at *3 (N.D. Ill. Aug. 12, 1996) ("If medical personnel do not respond to complaints of pain, they are not liable if they honestly believed the inmate was malingering."). In fact, Plaintiff himself confirms that Defendant Lukas apparently doubted Plaintiff's need for pain medication when he stated the following in his deposition: "In other words, I wasn't provided with pain medication until the veracity of the injury was verified by Miss Lucas [sic]."[5] ECF No. 394 at 25, page 91 of the

_____

[5] Of course, Plaintiff's complaint is, in part, that had Ms. Lukas conducted a more thorough exam on March 31, 2007, she would have been able to confirm the veracity or extent of Plaintiff's injuries and ordered him pain medication then rather than on April 2, 2007. However, Plaintiff does not deny that Ms. Lukas came to his cell and provided some examination if only a visual inspection and made some inquiries concerning his state, even if he denies that she conducted as extensive an examination as reflected in the contemporaneously created progress notes. <u>See</u>, <u>e.g.</u>, <u>Johnson v. Snow</u>, No. 04-CV-632, 2008 WL 2224949 (N.D.N.Y. May 27, 2008) ("Johnson has also failed to show that Khan and Miller were deliberately indifferent to his medical needs. Such claims stem solely from medical examinations which were not to Johnson's satisfaction, and the failure to provide a splint or X-ray examination. Nevertheless, Johnson admittedly received some treatment after the alleged assault. His injuries were visually inspected by both Khan and Miller, and he was provided pain medication. It would appear that Johnson

Transcript Lines 14 to 16.  No reasonable jury based on this evidence even viewed in a light most favorable to Plaintiff could find deliberate indifference on the part of Ms. Lukas.

In the alternative, the most that this record shows is **not** that Plaintiff was denied ibuprofen but that his receipt of the ibuprofen was delayed.  In fact, Defendant Lukas came to Plaintiff's cell on April 1, 2007 to follow up but Plaintiff was out on a visit with a family member.  ECF No. 325 at 5.  That she did so, certainly rebuts any deliberate indifference mindset as least with respect to April 1, 2007.  This is true notwithstanding that she did not attempt to see him later that day given that Plaintiff was out on a family visit, especially given that she was not the sole medical provider available to Plaintiff as he himself concedes.  See ECF No. 427 at 35, ¶ 168 (noting medical staff being on duty 24 hours a day).   Lukas then arranged to see Plaintiff on April 2, 2007, at approximately 8:30 a.m., in the triage room.  At that time, she examined Plaintiff.   Once again the contemporaneous medical Progress Notes, created by Lukas, indicated that Plaintiff got up and down off of the exam table without difficulty.  ECF No. 325 at 6.  Plaintiff provides an affidavit dated April 1, 2011, wherein he claims that he did not do so and needed the assistance of guards to get up and to get off of the exam table.   ECF No 407-23 at 1¶ 7.  Plaintiff does not provide any affidavits from the guard who allegedly was required to help him.  But again, for present purposes we accept Plaintiff's version of the facts.  Plaintiff himself concedes that after the exam, Lukas ordered an x-ray of Plaintiff's chest and lumbar spine, as well as pain medication and an ice pack.  ECF No. 427 at 36 to 37.  Plaintiff also concedes that on April 3, 2007, he did in fact receive the ibuprofen ordered.  Id, at 37, ¶180.

simply disagreed with the course of treatment which he was provided. Accordingly, Johnson runs afoul of the rule that a difference of opinion between a prisoner and medical staff as to medical treatment does not establish deliberate indifference.") (footnote omitted).  As noted above, accepting Plaintiff's version of the "exam" such a cursory exam at most constitutes negligence.

Hence, at most, this record reveals a delay in the treating of Plaintiff's reported pain, that was (accepting Plaintiff's version), allegedly reported on March 31, 2007, and which was not treated with an ice bag for any swelling until April 2, 2007 and was not treated with ibuprofen until April 3, 2007.

The general rule is that "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in . . . harm." <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993); <u>Sealock v. Colorado</u>, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in . . . harm."). This is the rule in this Circuit. <u>See</u>, <u>e.g.</u>, <u>Brooks v. Kyler</u>, 204 F.3d 102, 105 n.4 (3d Cir. 2000) (the prisoner-plaintiff "presented no evidence of any harm resulting from a delay in medical treatment."); <u>Fox v. Lawrence County Jail</u>, CIV. A. 06-1010, 2008 WL 2704546 at *10 (W.D.Pa. June 30, 2008) ("Instantly, Plaintiff has failed to adduce any evidence of additional harm caused by the delay.").

In this case, Plaintiff has failed to allege any additional harm caused by the short delay in treatment. He has also failed to present any evidence of additional harm caused by any delay attributable to Lukas. Hence, he cannot meet his summary judgment burden to show an Eighth Amendment violation. Nor do we find that any other of the evidence that Plaintiff cites, considered either individually or cumulatively, creates a genuine issue of material fact. Accordingly, Defendant Lukas is entitled to summary judgment on this claim.

### 3. <u>Failure to Provide Prilosec from December 21 to December 28, 2007</u>

#### (a) Prescription of Prilosec

It is undisputed that Plaintiff has been diagnosed with Gastroesophageal Reflux Disease, commonly referred to as "GERD." In November 2007, Defendant, Dr. Caramanna ordered a six

month supply of Prilosec for Plaintiff to treat his GERD.  Prilosec is a non-formulary drug, meaning that it has to be specially ordered from Diamond Pharmacy, which is the pharmacy from which SCI-Greene obtained medications.  See ECF No. 394-8 at 2, ¶ 7.  It is also undisputed that from December 22, 2007 until December 28, 2007, Plaintiff did not receive his Prilosec.  Plaintiff did receive his Prilosec on December 29, 2007.   ECF No. 427 at 44, ¶ 224.

> **(b)  There is no evidence that either of the Moving Defendants had any knowledge or involvement in the procurement or dispensing of Prilosec to Plaintiff.**

Defendant Dr. Caramanna provided a sworn verification that he was not aware that Plaintiff did not receive Prilosec during the relevant time.  ECF No. 394-8 at 2, ¶ 10.  Defendant Lukas also provided a sworn verification indicating the she was not involved in the distribution of Plaintiff's Prilosec medication; that the distribution of Plaintiff's medicine is controlled by the Department of Corrections; she had no role in contacting Diamond Pharmacy for the medication and that Plaintiff did not come to sick call and was not seen by medical providers from December 22 to December 28, 2007.  ECF No. 394-6 at 2, ¶¶ 19 & 23 to 25.  This evidence was sufficient for the Moving Defendants to show a lack of evidence as to the subjective or deliberate indifference  prong of the Eighth Amendment claim.  Thus, the burden shifts to Plaintiff to point out where in the record there is evidence of the subjective prong such that jury could find for Plaintiff.

> **(c) Plaintiff's evidence does not establish "deliberate indifference" by the Moving Defendants.**

Plaintiff makes a broad range of assertions as to the provision of Prilosec in an attempt to proffer evidence of "deliberate indifference."  The evidence again fails to establish an Eighth Amendment claim against the Moving Defendants.

**(i) Prilosec order from Diamond Pharmacy Services**

Plaintiff contended that the Moving Defendants were made aware by Ron McElroy ("McElroy"), a nurse, on December 17, 2007, that Plaintiff's Prilosec did not arrive as scheduled. He points to ECF Nos. 407-3, 407-4, 407-5, 407-6 and 407-19. ECF No. 407 at 12.

ECF Nos. 407-3 and 407-4 are 2 pages of a Diamond Pharmacy Services Controlled Medication Delivery sheet. ECF No. 407-4, is apparently page 12 of 14 pages and indicates that SCI Greene received a zero quantity of Plaintiff's Omeprazole (i.e., a generic version of Prilosec) and the date of the Report was Monday, December 17, 2007 at 5:35 p.m. There is no indication on this sheet that it was ever seen by Defendants Caramanna or Lukas. ECF No. 407-3 is apparently page 14 of 14 pages and summarizes that there were a total of 210 prescriptions sent and warns at the bottom of the sheet that any discrepancies must be phoned into Diamond Pharmacy Services within one business day after the date of delivery.

ECF Nos. 407-5 and 407-6 are different forms from Diamond Pharmacy, which appear to be receipts initialed by Nurse McElroy, apparently employed by the Department of Corrections. See ECF No. 407-19 at 1, ¶ 4. The receipts show medication ordered December 17, 2007, and that four of four lots to be delivered were in fact delivered to SCI-Greene. These receipts do nothing to establish that Defendants Lukas and Caramanna knew that Plaintiff did not receive his Prilosec.

In an attempt to establish the requisite connection between these documents and knowledge on the part of the Moving Defendants, Plaintiff offers his own affidavit dated April 1, 2011, ECF No. 407-19, in which he states that on December 23, 2009, some two years after the incident where Plaintiff did not receive his Prilosec in December 2007, he had a conversation with Nurse McElroy. Plaintiff indicates that he inquired of Nurse McElroy as to the procedures

for medication delivery. Plaintiff says that Nurse McElroy told Plaintiff that "whenever medications are supposed to be delivered to the facility, he has a list of what medications are supposed to be delivered, and when they aren't, a notation is made in that inmate[']s medical record, and he informs whoever prescribed the medication, or the nurse practitioner on duty about the shortage, so it can be reordered. . . . Plaintiff avers that Ron McElroy also indicated that 'I do my job and make sure that the right people are told about the problem.'" ECF No. 407-19 at 1. In an apparent attempt to explain why Plaintiff had not heretofore mentioned such a conversation during the roughly three years over the course of this litigation, Plaintiff "avers that over a year after this conversation took place, Plaintiff could not specifically remember 'Ron McElroy's' name, [and] therefore disregarded what Plaintiff learned and was told." ECF No. 407-19 at 2, ¶ 8. Plaintiff avers that he allegedly forgot the name of the person, but does not say he forgot the existence of the conversation or its contents and why he did not earlier mention the existence of such a conversation even absent the name of the person with whom he allegedly had such a conversation. There are several problems with such evidence being considered.

First, we note that Plaintiff's recounting of what Nurse McElroy allegedly told people or the two Moving Defendants constitutes hearsay and while such might be considered on summary judgment, those alleged statements can only be considered during summary judgment proceedings if Plaintiff can show that Nurse McElroy's statements can be introduced in court in a form of admissible evidence, which would entail Nurse McElroy providing such testimony. Fed.R.Civ.P. 56 Adv.Comm.Notes (2009 Amendments) ("The burden is on the proponent to

show that the material is admissible as presented or to explain the admissible form that is anticipated" at trial).[6]   Plaintiff has failed to carry his burden to show that he can do so.

Even if, Plaintiff could cure this evidentiary defect, by for example, offering an affidavit from Nurse McElroy confirming Plaintiff's version of the alleged conversation, such would not create a genuine issue of material fact.  This is because, at most, the statements establish what Nurse McElroy usually did, it does not say what he did do in this particular episode.  Even if notations about the non-receipt of a prisoner's medications are made in the prisoner's medical records, there is no evidence in which part of a prisoner's medical records such notations are made nor is there evidence of how often, if ever, either of the Moving Defendants would review that portion of a prisoner's medical records containing such a notation as a routine matter or even if they did so as a routine matter or if they only did so based on a particular reason.   Both Moving Defendants deny knowledge of Plaintiff not receiving his medication as ordered, and absent evidence that they reviewed Plaintiff's medical records between December 17, 2007 (i.e., the date it was noted Diamond Pharmacy had failed to deliver Plaintiff's Prilosec) and December 29, 2007, the date Plaintiff received his Prilosec, which afforded them such knowledge, Plaintiff fails to adduce evidence of the subjective prong.

To the extent that Nurse McElroy allegedly stated to Plaintiff that he "informs whoever prescribed the medication, or the nurse practitioner on duty about the shortage, so it can be reordered" and that Nurse McElroy always does his job, such again is insufficient because

---

[6]   While Rule 56(c)(2) contemplates the possibility that a party may object to evidence proferred, there is nothing that prevents the Court from noting *sua sponte* a non-movant's failing in this respect. See, e.g., Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD, 766 F.Supp.2d 1122, 1146 n.27 (W.D.Wash. 2011) (acknowledging power of court to raise objection sua sponte).  Even if the Court did not do so, there is nothing preventing the Defendants from raising the objection to Plaintiff's failings in response to this Report.

McElroy failed to state that he in fact did so in this instance. Moreover, at best, it might establish that he informed one or the other of the Moving Defendants with the use of the "or" in his alleged statement to Plaintiff but this is insufficient at it is Plaintiff's burden to show who acted with deliberate indifference and depending on which of the two Moving Defendants that McElroy allegedly informed about the failure of Diamond Pharmacy to provide the medication, only one of the two Defendants might have the requisite mindset. Absent such evidence that Nurse McElroy did in fact tell the Moving Defendants about the non-delivery of Prilosec and/or absent such evidence as to which of the two Moving Defendants, Nurse McElroy did inform, Plaintiff fails to carry his burden as to either in establishing the subjective prong.

### (ii) Request to Staff form filed on December 21, 2007.

Plaintiff also points to his alleged filing on December 21, 2007, a DC-135-A (request to staff) form sent to John McAnany, the acting Correction Health Care Administrator and Registered Nurse Supervisor, ECF No. 407 at 12, which complained of the Prilosec situation and which was dated December 22, 2007, a Saturday, with Christmas eve falling on the following Monday, December 24 and Christmas Day falling on the following Tuesday, December 25, and which was responded to by John McAnany on Wednesday, December 26, 2007, indicating that Plaintiff had to file a sick call request. ECF No. 81-1 at 107. Again, this evidence would not permit a jury to find that either Defendant Caramanna or Lukas knew of Plaintiff's lack of medication.[7]

---

[7] Dr. Caramanna works five days a week, apparently only the weekdays, and is on call only one weekend a month, ECF No. 329-1 at 28 ¶¶ 1 to 2. Even when he works, he only works 20 hours per week at SCI-Greene while working the other 20 hours at another institution. Id.

### (iii)     Sick Call slips dated 12/26/2007 and 12/12/2007.

Plaintiff also points to two sick call slips that he allegedly filled out on Thursday, December 26, 2007 and Friday, December 27, 2007, which he claims were directed to both Defendant Caramanna and Lukas because Plaintiff intimates their jobs would necessarily have entailed them seeing the sick call slips. Their names appeared nowhere on the two sheets. ECF No. 407 at 12 to 13. Further, there is no indication that either Caramanna or Lukas would have seen the sick call slips. At best, the evidence demonstrates that it was the responsibility of the Corrections Health Care Administrator to assure that "medical staff" "retrieve[d] the DC-500s Sunday through Thursday" ECF No. 407-17 at 2, ¶c. Plaintiff apparently claims these two sick call requests were directed at these two Defendants because he claims they were both the acting medical personnel on duty for the dates of Plaintiff's sick call receipt. However, there is no evidence that they were the only medical personnel that were on duty that day and there is no evidence that Plaintiff's alleged sick call slip requests ever made it into the hands of the Moving Defendants.

Apparently, the procedure for a prisoner seeking medical attention or a medical appointment is for the prisoner to place, or in the case of perhaps Capital Case Unit prisoners to request a guard or other employee to place, the sick call request form in the locked medical box on the housing unit or to give such slips directly to a medical staff person. See ECF No. 81-1 at 108 to 109 (instructions on the form). The parties do not point to evidence as when sick call requests are picked up or by whom they are seen or when they are seen as a general matter, yet alone evidence as to these two specific dates of December 27 and 28, 2007. In the face of the sworn statements by Dr. Caramanna and Lukas that they did not see the sick call slips and that

there is no record of such, the mere fact that these sick call slips were allegedly placed in the box on December 27 and 28, 2007 or given to a medical staff person does not meet Plaintiff's burden to demonstrate the subjective prong of an Eighth Amendment claim.[8]

### (iv) Fax to Diamond Pharmacy Services.

Plaintiff also points to a fax sent to Diamond Pharmacy, which requests Diamond Pharmacy to send Plaintiff's Prilosec. ECF No. 407 at 13. Plaintiff argues that because his first sick call slip was dated December 26, 2007 and the fax was sent on that very date to Diamond Pharmacy, the Defendants must have been aware of his lack of Prilosec. However, there is no indication as to who sent the fax and no evidence as to the fact that the mere sending of such fax required the participation of the two Moving Defendants, yet alone their knowing of the fax. In the face of the sworn statements that they did not know of Plaintiff not having his Prilosec, this evidence is insufficient to create a genuine issue for trial.

### (v) Miscellaneous Documents.

In addition, Plaintiff argues that the Defendants were made aware by Nurse McElroy that SCI-Greene had not received Plaintiff's Prilosec from Diamond Pharmacy. ECF No. 407 at 13. Plaintiff points to the following evidence to establish that the Moving Defendants knew Plaintiff was not receiving his Prilosec: ECF No. 325 at 37; ECF Nos. 407-8; 407-9; 407-10; 407-11

---

[8] We would make one observation about these so called sick call slips. If they were in fact correctly dated and were correctly timed, they were allegedly prepared at 8 a.m. each morning and then placed in the locked medical box at some point in time or given to staff. Plaintiff apparently was able to make a copy of these medical request slips and retain said copies for his file because Plaintiff first provided the same to this court when he attached them to one of his proposed amended complaints, ECF Nos. 11-9 and 11-10, before discovery was ever had. The copies he provided have "file" notated on them apparently in Plaintiff's handwriting. Apparently, Plaintiff made a copy of these two sick call slips contemporaneously, apparently having access to a copier on those dates at those times, even though the Defendants have no copies or any record of having received such sick call requests. See ECF No. 394-8 at 2, ¶ 11; ECF No. 394-6 at 3, ¶¶ 24 to 25.

and 407-19 (i.e., Plaintiff's affidavit recounting his alleged conversation with Nurse Ron McElroy, which we addressed above). However, this evidence that Plaintiff points to again fails to establish a genuine issue of material fact with respect to whether the Moving Defendants knew of Plaintiff's lack of Prilosec.

Having conducted an exhaustive review of Plaintiff's proffered evidence, it is clear that none of the evidence that Plaintiff points to, even when viewed in a light most favorable to Plaintiff, establishes a genuine issue of material fact with respect to the subjective prong of the Eighth Amendment as to either Dr. Caramanna or Lukas. As such the Moving Defendants are entitled to summary judgment on this claim.

### 4. Availability of Over The Counter Medications

Although not necessary to this Report and Recommendation, with respect to the alleged lack of ibuprofen from March 31 to April 2, 2007 and the alleged lack of Prilosec from December 21, to December 28, 2007, we take judicial note that both medications were available over the counter in 2007. Hence, to the extent that Plaintiff had access to such via commissary purchases, then he cannot make out an Eighth Amendment deliberate indifference claim when he was not provided these by the Moving Defendants, given his ability to acquire them for himself, if, in fact, he could. See, e.g., Irons v. Samu, NO. 06-CV-02254, 2010 WL 749797, at *10 (D.Colo., March 2, 2010) ("The plaintiff also attests that Dr. Bloor was deliberately indifferent to his health care needs because he asked her for Motrin; she said he could purchase Motrin at the canteen; he informed her that he had already taken four pills and was still in pain; and she responded that she would not be able to do anything for him at that time. . . . It is undisputed that the plaintiff could purchase Motrin from the canteen. The plaintiff's allegation that Dr. Bloor refused to provide it to him in the clinic does not show that she knew of and disregarded an

excessive risk to his health."); Wolff v. New Hampshire Dept. of Corrections, NO. 06-CV-321, 2008 WL 924530, at *4 (D.N.H. April 2, 2008) ("Finally, I note that Wolff also raised allegations at the evidentiary hearing regarding the prison's failure to provide him with his requested dosage of ibuprofen and the prison pharmacy's failure to fill his prescription for Mylanta. See Testimony of Wolff at 44-46. With respect to both claims, Wolff has failed to show that the prison officials acted with 'deliberate indifference to [his] serious medical needs' by not increasing his dosage of ibuprofen and by requiring him to purchase a liquid antacid at the canteen rather than providing Mylanta at the prison pharmacy."); Mitchell v. Valdez, NO. 3-07-CV-0036, 2007 WL 1228061, at *2, n.2 (N.D.Tex., April 25, 2007 ("Several courts have rejected claims brought by prisoners alleging deliberate indifference on the part of jail officials for failing to dispense medication where the same or substantially similar medication was available for purchase at the commissary.").

### 5. **Retaliation**

Plaintiff had alleged a cause of action for retaliation against the Moving Defendants, asserting that they "unlawfully took measures to ensure that the Plaintiff did not receive treatment for his acid reflux decease" [sic]. ECF No. 427 at 50, ¶ 256. Plaintiff alleged that the Moving Defendants retaliated against him because of his filing the following grievances: Grievance No. 151737 (filed 5/11/2006); No. 183709 (filed 4/2/2007); No. 187595 (filed 5/11/2007); No. 192681 (filed 7/4/2007); and No. 211627 (filed 12/22/2007). In his response to the Motion for Summary Judgment filed by the Moving Defendants, Plaintiff withdrew his retaliation claims. ECF No. 405 at 2, ¶ 2.[9]

---

[9] We note that during the pendency of the Moving Defendants' Motion for Summary Judgment, Plaintiff filed a Mandamus Petition in the United States Court of Appeals for the Third Circuit,

## III. CONCLUSION

For the reasons set out in this Report and Recommendation, it is respectfully recommended that the Moving Defendants' Motion for Summary Judgment, ECF No. 393 be granted.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by December 30, 2011. Failure to timely file objections will constitute a waiver of any appellate rights. Brightwell v. Lehman, 637 F.3d187, 193 n.7 (3d Cir. 2011).

s/ Maureen P. Kelly
Maureen P. Kelly
U.S. Magistrate Judge

cc:
**ROBERT GENE REGA**
FA 4771
S.C.I. at Greene
175 Progress Drive
Wayneburg, PA 15370

---

complaining that the District Court was failing to rule on the pending motion in a timely manner. The Court of Appeals denied that petition on December 5, 2011. In re Rega, No. 11-4008, 2011 WL 6016966 (3d Cir. Dec. 5, 2011).