# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT GENE REGA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-156 |
| | ) | |
| v. | ) | Judge McVerry |
| | ) | |
| THOMAS ARMSTRONG, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Now pending before the Court is Defendant's MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM TESTIFYING ABOUT VIOLATIONS OF DOC POLICIES (ECF No. 520), with a brief in support (ECF No. 521). Defendant argues that Plaintiff should be precluded from introducing testimony and evidence about alleged violations of Department of Corrections ("DOC") polices, "since violating a [DOC] policy does not rise to the level of a constitutional violation[.]" As Defendant sees things, allowing Plaintiff to offer such evidence and testimony runs the risk of unfairly prejudicing him and confusing the issues before the jury.

Plaintiff, unsurprisingly, takes a different view. In his response in opposition to the motion (ECF No. 530), he submits that Defendant's conduct leading up to the assault – specifically, his decision to allow Inmate Overby out of his cell to search for the missing spray bottle without being strip searched and unaccompanied by corrections officers – violated three DOC policies:

(1) The policy that requires all inmates to be strip searched before being removed from their cells and also requires the presence of at least two corrections officers whenever a cell door is opened;

(2) The policy stating that, "Staff issues, collects, and accounts for all cleaning supplies

1

issued to an inmate[;]" and

(3) The policy stating that, "All cell doors are to be secured when inmate[s] exit[] their cells."

According to Plaintiff, the existence of these policies and Defendant's violation thereof is relevant to show that Defendant conspired with Inmate Overby to attack Plaintiff. More specifically, he argues that the jury could infer from the first alleged policy violation that Defendant "sought to conceal Mr. Overby's departure from the other four officers in the unit who may have thwarted, even just by their presence in the area, their plan to attack [Plaintiff.]" Pl.'s Resp. at 4. Plaintiff also argues that Defendant's alleged violation of the second policy, which prohibits inmates from collecting cleaning supplies, renders Defendant's "excuse for letting Mr. Overby out [of] his cell [] implausible." *Id.* at 5. Finally, Plaintiff argues that the third violation may be used to "infer that [Defendant] intended for Mr. Overby's cell door to remain open so that he could quickly escape back to his cell after the attack." *Id.*

The Court agrees with Plaintiff. To be sure, "the policies of the Department of Corrections and the Eighth Amendment are not the same[.]" *Delker v. Blaker*, No. CIV.A. 09-710, 2012 WL 726415, at *6 (W.D. Pa. Mar. 1, 2012). But Plaintiff is not attempting to supplant the requirements of the Eighth Amendment with the requirements of the DOC's policies or to show that the violation of the latter equates to a violation of the former. Rather, he is attempting to use the existence of the policies to discredit Defendant's explanation of the allegedly inadvertent coincidences that led to Overby gaining access to Plaintiff's cell. The evidence is certainly relevant for that purpose. Simply put, a jury could infer from the existence of the policies and Defendant's alleged violation of them, together with the alleged mishap that led to the opening of Plaintiff's cell door, that there was an unusual or extraordinary deviation from the

usual operating procedure, which placed an absolute premium on safety and security, suggestive of Defendant's involvement in Plaintiff's assault – in other words, that this was no accident.[1]

Furthermore, in the Court's view the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice or confusion of the issues, such that the "presumption of admissibility" established by Rule 403 has been overcome. *See United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002). On the one hand, the evidence is quite probative of the critical issue in this case, insofar it calls into question Defendant's explanation of why he allowed Inmate Overby out of his cell. If, as Defendant claims, he let Inmate Overby out of his cell to search for the spray bottle and not some more nefarious reason, then why didn't he comply with DOC policies beforehand by having guards present to strip search Overby and accompany him out of his cell? And why did he leave Overby's cell door open? Might he have been trying to allow Overby to evade his colleagues and then slip surreptitiously back into his cell after the deed was done? On the other hand, the Court fails to see how Defendant would be *unfairly* prejudiced by the admission of this evidence. The evidence is certainly prejudicial since it undermines Defendant's theory of the case, but "all evidence is inherently prejudicial; it is only *unfair prejudice* substantially outweighing probative value that permits exclusion of relevant evidence under Rule 403." *Austin v. Hill*, No. CIV.A. 11-2847, 2014 WL 3054268, at *5 (E.D.

---

1. Defendant's reliance on *Hankins v. Wolf*, No. 1:12-CV-00168, 2016 WL 3087677, at *2 (W.D. Pa. June 2, 2016), is misplaced. In that case, the defendant-corrections officer was reprimanded after an internal investigation, and the Court prevented the plaintiff from introducing any evidence regarding the investigation into evidence because it was not relevant to whether the Plaintiff's Eighth Amendment rights were violated. *Id.* at *2. The plaintiff was, in other words, attempting to use the DOC policy violations and the defendant's subsequent reprimand to establish that his rights were violated. Here, by contrast, Plaintiff is doing no such thing. The existence of the policies is solely being used to attack the credibility of Defendant's story. The Court likewise finds the list of cases cited in Footnote 2 of Defendant's brief to be inapposite, for, unlike in those cases, Plaintiff is not attempting to base his constitutional claim on the violation of a DOC policy.

Pa. July 7, 2014)") (emphasis added). "'[U]nfair prejudice' means 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Cross*, 308 F.3d at 324 n.23 (quoting Advisory Committee Note to Rule 403). There is nothing improper about a jury using the existence of the policies and the alleged deviation therefrom to infer that Defendant's story does not add up. Indeed, Defendant remains free to argue to the jury, for example, that these policies did not actually apply to the situation at hand or that they are frequently disregarded or that they simply were not violated, thereby countering any effect the evidence may have.

Nor does the Court envision that this evidence will confuse the issues. As Plaintiff points out, he "does not seek to introduce any facts regarding whether [Defendant] was disciplined for DOC policy violations[,]" which "removes any risk that the jury will 'substitute the Department's determination of facts and its conclusion of Defendant['s] culpability for their own." Pl.'s Resp. at 7 (quoting *Delker*, 2012 WL 726415, at *6). And to the extent that there is any risk of confusing the issues, it can be minimized with a cautionary instruction, advising the jury that a violation of a DOC policy does not, in and of itself, establish that Plaintiff's rights were violated.

Accordingly, Defendant's MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM TESTIFYING ABOUT VIOLATIONS OF DOC POLICIES (ECF No. 520) is hereby **DENIED**.

**SO ORDERED**, this 21st day of June, 2016,

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc:   All Counsel of record via CM-ECF